IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MARK DEWAYNE PRICE,

    Plaintiff,

v.                              CIVIL ACTION NO. 2:08-00259

CORRECTIONAL MEDICAL
SERVICES, INC.,

    Defendant.

MEMORANDUM OPINION AND ORDER

      Pursuant to the court's March 31, 2010, Order in which the court granted defendant's motion for summary judgment (Doc. No. 54) and indicated that an explanatory memorandum opinion would follow, the court now issues its memorandum opinion.

I.  **Background**

      In his complaint filed on April 17, 2008, plaintiff Mark Price, an inmate at Mount Olive Correctional Complex, ("MOCC"), alleges that he began experiencing pain from a lump in one of his testicles in January 2008.  (Doc. No. 2 at 4.)  Price asserts that he submitted a sick call slip to the MOCC medical services department, but failed to receive a response.  (Id.)  He alleges that, through repeated requests for treatment, he was seen by a nurse, a physician's assistant, and twice by a physician.  (Id. at 5, 8.)  Price contends that the antibiotics and over-the-counter pain medications given to him did not relieve his

discomfort.  (Id. at 8.)  He further alleges that, as of the filing of the complaint, an ultrasound request submitted by the physician had yet to be fulfilled.  (Id.)  For relief, Price seeks compensatory and punitive damages, as well as treatment by an independent physician.  (Id. at 5-6.)

On January 21, 2010, Magistrate Judge Mary E. Stanley submitted her Proposed Findings and Recommendation ("PF & R"), in which she concluded that a genuine issue of material fact exists as to whether defendant Correctional Medical Services, Inc., ("CMS"), was deliberately indifferent to plaintiff's serious medical need.  (Doc. No. 71.)  Defendant filed timely objections on February 2, 2010, (Doc. No. 74), to which plaintiff filed a response.  (Doc. No. 76.)  Thereafter, the court conducted a de novo review of defendant's objections.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985).

The court is aware of no material facts upon which the parties disagree.  Plaintiff's first complaint of testicular pain appears in a medical services request form dated December 19, 2007, and received by CMS on December 21, 2007.  (Doc. No. 58-1 at 2.)  Although the request form has a "sick call" notation for December 23, 2007, it is not clear whether plaintiff was actually seen on that date.  Regardless, the complaint indicates that plaintiff dates his condition to January 2008.  (See Doc. No. 2 at 4.)  On January 4, 2008, Price completed a medical services

-2-

request form, which was received by CMS three days later.  (Doc.
No. 58-1 at 2.)  On January 8, 2008, he was seen by a nurse who
referred him to a physician's assistant for further evaluation.
(Id. at 3.)  On the same day, the physician ordered that Price be
given Tylenol and Motrin three times a day for his discomfort.
(Id. at 23.)  Plaintiff's complaint indicates that he was seen by
a nurse sometime shortly thereafter, and that the nurse detected
a knot about the size of a marble.  (Doc. No. 2.)

        On January 14, 2008, Price was seen by a physician's
assistant, ("PA"), who noted that plaintiff complained of a
painful knot behind his left testicle that was not causing any
urinary problems.  (Doc. No. 55 at 3, 5; Doc. No. 58-1 at 19,
22.)  The PA assessed the condition as epididymitis and
prescribed the antibiotic Ciprofloxacin twice daily for fourteen
days.  (Id.)  He also ordered a complete blood count, metabolic
profile, fasting lipids, and urinalysis, and directed Price to
return if his symptoms did not improve.  (Id.)  The PA also noted
that, when he told plaintiff he did not feel a marble-sized knot
as described, plaintiff became angry.  (Id.)  When the PA
declined Price's request that he reexamine him, Price threatened
litigation.  (Id.)

        On January 22, 2008, when plaintiff was still complaining of
testicular pain, he was referred to a physician for reevaluation.
(Doc. No. 58-1 at 22.)  He was seen by the doctor on February 1,

2008, when plaintiff indicated that, for more than a month, he had been suffering from a painful knot behind his left testicle which had not gotten smaller. (Id. at 30.) Price told the doctor that he examined the knot frequently. (Id.) He was ordered to take Percogesic three times daily for a month for the pain, and was directed to use a warm washcloth on the area three times daily. (Id. at 22.)

On February 25, 2008, Price completed a medical services request form indicating that the pain medicine and washcloth regimen were not alleviating his pain. (Id. at 8.) He was referred to the doctor the following day, and was seen by Dr. Ebenezer Obenza on February 29, 2008. (Id. at 22.) Dr. Obenza's notes indicate that Price had been given a scrotum support a few months earlier, but that it had not helped his discomfort. (Doc. No. 70-3 at 6.) Dr. Obenza detected a cystic-like lesion on the back of the left testicle measuring approximately 1.2 cm. (Id.) Against Dr. Obenza's advice, plaintiff declined a rectal examination. (Id.) Price described the pain as 5 on a scale of 1 to 10, but noted that the manipulation from his self-examinations sometimes raised the pain level to 10. (Id. at 7.) At plaintiff's request, Dr. Obenza continued the prescription for Percogesic.[1] (Id.) He also prescribed Naprosyn, and requested

---

[1] Plaintiff asserts that he requested Percogesic only after he was told that he would not be given stronger pain medication. (Doc. No. 76 at 4.)

-4-

authorization for an ultrasound.  (Doc. No. 58-1 at 22.)  On
March 6, 2008, the Regional Medical Director ("RMD") responded to
the ultrasound request, which was deferred in favor of a course
of the antibiotic Clindamycin, with plaintiff to be reevaluated
after two to three weeks.  (Id. at 21.)

On April 5, 2008, Price again requested medical services,
explaining that he had not yet received an ultrasound and that
his condition had not improved.  (Id. at 7.)  The following day,
he was transferred to the infirmary for constant observation, and
was given Motrin and Tylenol three times a day.  (Id. at 12, 28.)
He was examined by Dr. Obenza again on April 7, 2008, when he
raised concerns about the possibility of testicular cancer,
informing the doctor that his uncle had suffered from the
condition.  (Id. at 12-13, 26-27.)  Dr. Obenza submitted a
request for a urology consult and renewed plaintiff's
prescription for Naprosyn and Percogesic.  (Id. at 21.)

Price requested to leave the infirmary on April 8, 2008.
(Id. at 13.)  On April 10, 2008, he was seen again by a PA.  (Id.
at 10.)  Price told the PA that the pain in his testicle ranged
from 5/6 up to 10/11.  (Id.)  The PA diagnosed the condition as
an epididymal cyst and requested a urology consult, noting that
this request was a duplicate, as the April 7 request had not yet
been acted upon.  (Id.)  The urology consult request was denied
on April 23, 2008, with the RMD noting only "criteria not met."

-5-

(Id.)  In plaintiff's progress notes, the PA indicated that plaintiff's self-palpation of the testicle was leading to inflammation and increased pain.  (Id. at 13-14.)

Dr. Obenza's progress notes from April 24, 2008, were translated as follows:[2]

> Consultation request for exam per Regional Medical Director recommendations.  Instead of the urology consult recommend ultrasound of left scrotum to submit request. (Memo last week states in anticipation of April 20th close out date consultation request for out patient services will not be accepted 4/24/08.  However medical records staff say still submit?)  Off site submitted for recommended ultrasound.

(Doc. No. 70-3 at 12.)

Because its contract was not renewed, CMS did not provide medical services at MOCC beyond April 30, 2008, at which time Wexford Health Sources, Inc., took over as medical services provider.  (See Doc. No. 54-1.)  According to the affidavit of Mary Westfall, the Health Services Administrator for CMS during the relevant time period, Price underwent an ultrasound on May 14, 2008, which confirmed the presence of a cyst.  (Id.) Westfall affirms that the ultrasound, itself, did not provide any treatment, nor require any treatment which was not already being provided to plaintiff.  (Id.)

---

[2]  Due to the illegibility of certain medical records, Magistrate Judge Stanley directed CMS to provide translations of some of plaintiff's medical records.  (Doc. No. 64.)  Because Dr. Obenza is now deceased, the translation of his notes was performed by other medical professionals.  (Doc. No. 65.)

## II.  <u>Standard of Review</u>

With regard to summary judgment, Rule 56 of the Federal
Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered if the pleadings,
> the discovery and disclosure materials on file, and any
> affidavits show that there is no genuine issue as to any
> material fact and that the movant is entitled to judgment
> as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the burden of
establishing that there is no genuine issue as to any material
fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).
As the United States Supreme Court of Appeals stated in <u>Celotex</u>,
"the plain language of Rule 56(c) mandates the entry of summary
judgment, after adequate time for discovery and upon motion,
against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial."  <u>Id.</u> at 322.

Once the moving party has met its burden, the burden then
shifts to the nonmoving party to produce sufficient evidence for
a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support
> of the plaintiff's position will be insufficient; there
> must be evidence on which the jury could reasonably find
> for the plaintiff.  The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors could find, by
> a preponderance of the evidence, that the plaintiff is
> entitled to a verdict . . . .

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  "If

the evidence is merely colorable, or is not significantly probable, summary judgment may be granted." Id. at 250-51. Significantly, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.  Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III.  Analysis

An inmate alleging an Eighth Amendment violation based on inadequate medical care must show that a prison official subjectively "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  It is not enough under this standard that the inmate was the victim of negligence or even medical malpractice, and "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Importantly, the right to treatment is "limited to that which may

-8-

be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." <u>Bowring v. Godwin</u>, 551 F.2d 44, 47-48 (4th Cir. 1977)(emphasis added).

Under some circumstances, a significant delay in medical treatment may give rise to a constitutional violation. <u>Webb v. Hamidullah</u>, 281 Fed. Appx. 159, 166 (4th Cir. 2008). "An Eighth Amendment violation only occurs, however, if the delay results in some substantial harm to the patient." <u>Id.</u> (internal citations omitted). <u>See also</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1335 (9th Cir. 1990)("A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm."). Substantial harm may be most persuasively demonstrated where the delay in treatment causes further injury to the inmate, but the requirement may also be met where the delay causes unnecessarily prolonged pain and suffering. <u>Sealock v. Colorado</u>, 218 F.3d 1205, 1210 n.5 (10th Cir. 2000), <u>cited in</u> <u>Webb v. Driver</u>, 313 Fed. Appx. 591, 593 (4th Cir. 2008).

In her PF & R, the magistrate judge concluded that the care Price received was insufficient for "[a] condition causing severe pain over a period of months . . . ." (Doc. No. 71 at 15-16.) She further concluded that the RMD's deferral of procedures and an expert consultation evince a policy of denying and delaying off-site treatment, and that CMS's "refusal to prescribe

-9-

medications which would reduce Plaintiff's pain is indicative of a policy of saving costs at the expense of the patient's comfort." (Id. at 16.)   In arriving at these conclusions, the magistrate judge relied in part on the April 24, 2008, progress notes of Dr. Obenza as evidence that CMS was delaying off-site treatment until after its contract expired at the end of that month.

On the contrary, the medical records in this matter reflect timely and comprehensive attention to plaintiff's condition under the circumstances.  Price was seen numerous times by medical staff, usually with very little delay.  His condition was monitored closely, and the diagnosis of his care providers – that he suffered from a benign cyst – proved to be correct.  Price was prescribed various medications to treat his discomfort and symptoms, and even if he claimed to suffer persistent pain, there is no indication that he was refused any pain medication which was recommended by his treating physician.  While the RMD did defer the initial request for an ultrasound, he did so in favor of a short course of antibiotics and directed that the patient be reevaluated afterward.  See Bowring, 551 F.2d at 47-48 (approving limitation of treatment on cost and time basis, so long as treatment is reasonable).  If Dr. Obenza's cryptic April 24 note may be read as evidence of a dilatory strategy on the part of

-10-

CMS, his contemporaneous request for off-site treatment would seem to be inconsistent with this theory.

Finally, there is simply no evidence that Price suffered substantial harm as a result of CMS's actions. There is no indication that his condition became more severe or that he was declined *treatment* (as opposed to a diagnostic procedure) in order to save costs. While prolonged pain and suffering may amount to substantial harm even in the absence of further injury, Webb, 313 Fed. Appx. at 593, it must be noted that in this case, plaintiff's self-palpation of the affected area exacerbated his discomfort. Moreover, it is not the court's place to direct that a plaintiff be given narcotic pain medication where his treating physician has not indicated that it would be appropriate. Even viewing the facts in the light most favorable to plaintiff, he has failed to prove any injury of constitutional dimension, and this action must therefore be dismissed.

## IV.  Conclusion

Finding that there is no issue of material fact and that defendant is entitled to judgment as a matter of law, the court (1) **SUSTAINS** defendant's objections to the magistrate judge's findings (Doc. No. 74); (2) **GRANTS** defendant's motion for summary judgment (Doc. No. 54); and (3) **DENIES** plaintiff's motion to dismiss defendant's motion for summary judgment (Doc. No. 58). A

-11-

Judgment Order of even date shall be entered effectuating the court's ruling.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record and to plaintiff, pro se.

It is **SO ORDERED** this 10th day of May, 2010.

ENTER:

David A. Faber
Senior United States District Judge

-12-